UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **RANDI D. FITTS and BRIAN FITTS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | CAUSE NO. 1:07-CV-330 |
| ) | |
| **LIFE INSURANCE COMPANY OF NORTH** ) | |
| **AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

On November 10, 2006, Richard Fitts ("Richard") died as a result of injuries he sustained in a motorcycle accident ten days earlier. His two adult children, Plaintiffs Randi Fitts and Brian Fitts, sought, unsuccessfully, to recover $50,000 in life insurance proceeds under a group accidental death policy issued to Richard by Defendant Life Insurance Company of North America ("LINA") through his employer. As a result, Plaintiffs filed this lawsuit against LINA under 29 U.S.C. § 1132(a)(1)(B), better known as § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), alleging that LINA wrongfully denied their claim for benefits.[1] (Docket # 1.)

Both Plaintiffs and LINA now move for summary judgment. (Docket # 34, 37.) The issue before the Court boils down to whether LINA was correct in denying benefits under the "intoxication" exclusion of the policy and because death arising from driving while intoxicated is not an "unforeseeable" event. Upon a *de novo* review of the administrative record, the Court

---

[1] Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

finds that LINA was correct to deny benefits to Plaintiffs; as a result, LINA's motion for summary judgment will be GRANTED, and Plaintiffs' motion will be DENIED.

## I. FACTS

On or about February 1, 2006, LINA issued a group accidental death policy no. OK961202 (the "Policy") to Richard through his employer, The Connection Company.[2] (AR 88-120; Am. Compl. ¶ 5.) The Policy provided coverage for the accidental death of The Connection Company's employees, such as Richard, in the amount of $50,000. (Am. Compl. ¶ 5; AR 61, 91-99.) Richard named the Plaintiffs as his beneficiaries under the Policy. (AR 59-60; Answer to Am. Compl. ¶ 6.)

At 11:23 p.m. on October 30, 2006, in Allen County, Indiana, Richard crashed the motorcycle he was driving. (AR 56.) Assisting Officer M. Wentz, Assisting Officer W. Walsh, and Investigating Officer R. Wilcox completed a hand-written "Indiana Officer's Standard Crash Report," stating that the accident occurred on a straight road under dry surface conditions and that Richard drove "left of center" and "rode up onto the median," where he "struck a broken traffic sign support." (AR 56-58.) The officers reflected on the Report that "alcoholic beverages" were a "contributing circumstance" to the accident and listed Richard's "apparent physical status" as "had been drinking." (AR 57, 58.) The Report also indicated that a blood alcohol-drug test was administered, the results of which measured .11%.[3] (AR 10, 58.) No other

---

[2] The administrative record and the various insurance policy documents (Docket # 20) will be referred to throughout this Opinion as "AR __."

[3] On the Crash Report, the "pending" box was also checked with respect to the blood alcohol test results. (AR 58.) Presumably, the officers checked this box initially and then later inserted the .11% blood alcohol level when the test results were received.
  In that regard, police officers have a duty to investigate each motor vehicle accident that results in the injury or death of a person, Ind. Code § 9-26-2-1, and forward a written report to the state police department within twenty-

vehicles were involved in the accident. (AR 56-58.)

Ten days later, Richard died as a result of the injuries he incurred in the accident. (AR 52.) On the Certificate of Death, the cause of Richard's death was listed as "blunt force trauma of the head" as a consequence of a "motor vehicle crash" in which the "driver of a motorcycle lost control." (AR 52.)

After Richard's death, Plaintiffs sought the $50,000 life insurance benefit from LINA. (Comp. ¶ 8.) LINA, however, denied their request, finding that Richard's accident was excluded under the "intoxication" exclusion in the Policy, which reads as follows:

> [B]enefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from . . . [o]perating any type of vehicle while under the influence of alcohol . . . . Under the influence of alcohol, for purposes of this exclusion, means intoxicated, as defined by the law of the state in which the Covered Accident occurred . . . .

(AR 38-40, 105.)

Plaintiffs, through their attorney, administratively appealed LINA's decision, suggesting that Richard's accident was caused not by intoxication, but by the broken traffic sign and because he was unfamiliar with the motorcycle he was driving. (AR 19-20, 24.) LINA expressly invited Plaintiffs to submit additional evidence for consideration on appeal (AR 40), yet Plaintiffs chose not to do so. (AR 24.)

Upon reconsideration, LINA affirmed its denial of benefits, concluding that Richard's accident was not only excluded under the intoxication exclusion, but also because it failed to fall

---

four hours of completing the investigation, Ind. Code § 9-26-2-2. "An accident report . . . must be made on the appropriate form approved by the state police department and must contain all of the required information unless the information is not available." Ind. Code § 9-26-3-2. The forms supplied by the state police department "require sufficiently detailed information to disclose with reference to a traffic accident [including] the causes, locations, and conditions then existing and the persons and vehicles involved." Ind. Code § 9-26-3-1.

within the scope of a "covered accident," which is defined under the Policy as a "sudden, unforeseeable . . . event." (AR 9-11.) In its denial letter to Plaintiffs, LINA explained its reasoning that an accident arising from driving while intoxicated is foreseeable. (AR 9-11.)

Consequently, Plaintiffs filed the instant suit, seeking the Court's review of LINA's denial of benefits under 29 U.S.C. § 1132(a)(1)(B). (Docket # 1.) In their motion for summary judgment, Plaintiffs seek a declaratory judgment that they are entitled to benefits as a matter of law. (Mem. of Law in Supp. of Pls.' Mot. for Summ. J. 1.) Likewise, in its motion for summary judgment, LINA seeks judgment as a matter of law in its favor, arguing that no reasonable finder of fact could conclude that Plaintiffs are entitled to benefits under the Policy. (Def.'s Mot. for Summ. J. 1-2, 14.)

## II. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between

litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

The existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., Inc. v. Int'l Union of Operating Eng'rs*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross- motions, [the court's] review of the record requires that [it] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III. DISCUSSION

*A. Applicable Law Under ERISA*

When a plaintiff seeks benefits under ERISA § 502(a)(1)(B), the defendant's decision to deny or terminate benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989). When the plan confers discretionary power on an administrator or fiduciary, "the appropriate standard of review is the deferential 'arbitrary and capricious' one." *Ramsey v. Hercules Inc.*, 77 F.3d 199, 202 (7th Cir. 1996). Here, the parties stipulated to a *de novo* review by the Court. (*See* Docket # 25.)

The Seventh Circuit Court of Appeals has explained that in a *de novo* review, "district

5

courts are not *reviewing* anything; they are making an independent decision about the employee's entitlement to benefits." *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007). "In the administrative arena, the court normally will be required to defer to the agency's findings of fact; when *de novo* consideration is appropriate in an ERISA case, in contrast, the court can and must come to an independent decision on both the legal and factual issues that form the basis of the claim." *Id*. "What happened before the Plan administrator or ERISA fiduciary is irrelevant." *Id*.

Thus, the question before the district court is not whether the defendant gave the plaintiffs a full and fair hearing or undertook a selective review of the evidence; rather, the ultimate question is whether the plaintiffs are entitled to the benefits they seek under the plan. *Id*.; *see generally Moore v. INA Life Ins. Co. of New York*, 66 F. Supp. 2d 378, 385 (E.D.N.Y. 1999) (stating that a court reviewing a denial of ERISA benefits *de novo* essentially "stands in the shoes" of the ERISA fiduciary/administrator). "The standard is an objective one and the scope of judicial review is the same as it is with respect to any other alleged breach of contract. *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000) ("An ERISA plan is a contract . . . .").

"In construing the terms of the plan, we employ federal common law rules of contract interpretation." *Diaz*, 499 F.3d at 643. "Under those rules we are to interpret the terms of the policy in an ordinary and popular sense, as would a person of average intelligence and experience, and construe all plan ambiguities in favor of the insured." *Id*. at 644. "Plan language may only be deemed ambiguous where it is subject to more than one reasonable interpretation." *Id*. (internal quotation marks and citation omitted).

6

*B. Analysis*

Here, the parties' dispute essentially boils down to whether LINA was correct to deny Plaintiffs benefits based on the evidence in the administrative record indicating that Richard was driving while intoxicated.[4] For the following reasons, and having independently reviewed the record, that question must be answered in the affirmative.

As articulated *supra*, the Policy expressly states that benefits will not be paid for any loss "which, directly or indirectly, in whole or in part, is caused by or results from . . . [o]perating any type of vehicle while under the influence of alcohol." (AR 105.) It then defines "under the influence of alcohol" as "intoxicated, as defined by the law of [Indiana]." (AR 105.) Thus, the Policy is clear; the exclusion directs whoever is interpreting the Policy to look to state law to determine what constitutes "intoxication" necessary to meet the standard of the exclusionary clause. Because the Policy is clear on its face, there is no need to apply the principle of *contra proferentem*, that is, the construction of an ambiguous contractual provision against the party that drafted it. *See Sawyer v. Potash Corp. of Saskatchwean (Potashcorp)*, 417 F. Supp. 2d 730, 742-43 (E.D.N.C. Mar. 1, 2006) (citing *Balthis v. AIG Life Ins. Co.*, 5 Fed. Appx. 320, 2001 WL 262658, at *2 (4th Cir. 2001) (unpublished)); *see generally Glocker v. W.R. Grace & Co.*, 974 F.2d 540, 543-55 (7th Cir. 1992).

Therefore, to resolve the dispute in this case, the Court need only determine whether based on the evidence in the administrative record, Richard was intoxicated under Indiana law at the time of his accident. Plaintiffs direct the Court's attention to several sections of the Indiana

---

[4] The Court need not address the question of what evidence to review, as the parties have each predicated their arguments on the materials in the administrative record, and neither has sought additional discovery or sought to introduce any additional evidence. *See, e.g.*, *Marshall v. Blue Cross Blue Shield Ass'n*, No. 04 C 6395, 2006 WL 2661039, at *21 n.13 (N.D. Ill. Sep. 13, 2006).

7

Code which discuss intoxication, as well as several definitions articulated in Indiana case law.

Specifically, Indiana Code § 9-13-2-131 states that a blood alcohol level of at least .08% is "prima facie evidence of intoxication." In addition, Indiana Code § 9-13-2-86 provides that a person can be proven intoxicated without a blood alcohol test by showing that he was under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." Plaintiffs also point to a definition of intoxication in *Hornback v. State*, 693 N.E.2d 81, 85 (Ind. Ct. App. 1998), which states that there must be evidence that a driver of a motor vehicle (1) committed a traffic violation, (2) exhibits evidence of intoxication, and (3) has a blood alcohol content of .10% or more. *See also Hartman v. State*, 615 N.E.2d 455, 461 (Ind. Ct. App. 1993). Finally, Plaintiffs cite a definition mentioned in *Property-Owners Insurance Co. v. Ted's Tavern*, 853 N.E.2d 973, 979 (Ind. Ct. App. 2006), describing intoxication as "the state of being intoxicated . . . to a sufficient degree to impair mental and motor functioning."[5] *See also Henriott v. State*, 562 N.E.2d 1325, 1327 (Ind. Ct. App. 1990) (requiring evidence of an impaired condition regardless of blood alcohol content); *Hurt v. State*, 553 N.E.2d 1243, 1248 (Ind. Ct. App. 1990) (stating that a blood alcohol test is not essential to maintain a conviction for drunken driving and that it is sufficient to show the defendant was impaired), *overruled on other grounds by Ham v. State*, 826 N.E.2d 640 (Ind. 2005).

At the end of the day, the Court need not determine in this case which of the foregoing definitions apply because under any or all of them, there is adequate evidence in the record that

---

[5] Plaintiffs also cites to the definition of intoxication in a dram shop case, *Delta Tau Delta, Beta Alpha Chapter v. Johnson*, 712 N.E.2d 968, 974 (Ind. 1993), which the Court does not find probative here, since it concerns "actual knowledge of intoxication" with respect to furnishing alcoholic beverages.

Richard was intoxicated at the time of the accident. *See generally Karr v. Nat'l Asbestos Workers Pension Fund*, 150 F.3d 812, 814 (7th Cir. 1998) (noting that an ERISA administrator is not bound by the rules of evidence). To explain, the Crash Report reflects that Richard's blood alcohol level was .11%, which is well over the .08% that constitutes prima facie evidence under Indiana Code § 9-13-2-131.

In addition to his blood alcohol level, there is also adequate evidence in the administrative record indicating that Richard was impaired at the time of the accident. On that score, the officers documented on the Crash Report that "alcoholic beverages" were a "driver contributing circumstance," and that Richard's "apparent physical status" was "had been drinking." (AR 56-58.) The officers further documented that Richard drove "left of center" on a straight road during dry conditions and "rode up on to the median." (Tr. 56-58.) In fact, Richard's Certificate of Death states that the injuries occurred because he "lost control." (Tr. 52.)

Although Plaintiffs seek to make something of the fact that Richard was never charged with a traffic violation, the officers presumably deferred any such action given his serious injuries. Furthermore, just because the officers chose not to cite Richard at the time for driving left of center and up onto the median, does not mean that he did not, in fact, commit a traffic violation. *See, e.g.*, *Steele v. Life Ins. Co. of N. Am.*, 507 F.3d 593, 596-97 (7th Cir. 2007) ("If the insured's conduct is punishable as a felony, the insured's commission of that conduct is enough to come within the language of the policy's felony exclusion regardless of whether a felony *conviction* is actually sought or obtained."); *Carter v. Ensco Inc.*, 438 F. Supp. 2d 669, 675 (W.D. La. July 13, 2006) ("The fact that [the plaintiff] was not prosecuted for operating a vehicle while intoxicated does not preclude an administrative finding that he was indeed engaged

9

in an illegal act as that term is defined by the Plan.").

Perhaps most significantly, while Plaintiffs challenge the reliability and admissibility of the Crash Report and speculate that a broken traffic sign or Richard's unfamiliarity with the motorcycle could have contributed to the crash, they have offered no evidence to contradict the evidence of record indicating that Richard was intoxicated, despite LINA's express invitation to do so during the administrative process, or even after, to contest LINA's motion for summary judgment. *See Steele*, 507 F.3d at 597-98 (determining there was no genuine factual dispute that plaintiff's injuries resulted from his drunk driving because no evidence was presented suggesting an alternative cause); *Dipper v. Union Labor Life Ins. Co.*, 400 F. Supp. 2d 604, 611 (S.D.N.Y. 2005) (noting that plaintiff provides absolutely no evidence in support of his argument that the accident was based on a cause other than intoxication); *SGI/Argis Employee Benefit Trust v. Canada Life Assurance Co.*, 151 F. Supp. 2d 1044, 1048 (E.D. Ark. 2001) (finding it significant that the plaintiff did not come forward with any evidence challenging the accuracy of the blood alcohol test or its results). Moreover, there is no need to establish that intoxication was the sole, or even primary, cause of Richard's accident in this instance, as the Policy excludes payment of benefits for losses "directly or indirectly, in whole or in part" attributable to driving while intoxicated. (AR 105.) Thus, Plaintiffs' bare assertion that LINA lacked sufficient information to make a determination that Richard was intoxicated must be weighed against the complete absence of any evidence of record to the contrary. *See Dipper*, 400 F. Supp. 2d at 612.

In sum, we think that the administrative record contains adequate evidence, which is uncontradicted, that Richard's injuries were caused by or resulted from driving while intoxicated. *See, e.g.*, *Dipper*, 400 F. Supp. 2d at 611 (concluding that "the plaintiff's BAC of

.127, the observation of the police officer's accident report form that the individuals on the ATV had been drinking, and the circumstances of the accident outweigh[ed] the plaintiff's self-serving statement that he felt no negative effects of inebriation"). Consequently, LINA was correct to deny Plaintiffs benefits under the "intoxication" exclusion of the Policy.

Moreover, the Seventh Circuit Court of Appeals has definitively stated that injuries or death that occur as a result of driving while intoxicated are foreseeable. *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1110 (7th Cir. 1998); *see also Schultz v. Metro. Life Ins. Co.*, 994 F. Supp. 1419, 1422 (M.D. Fla. 1997) (acknowledging that the "horrors associated with drinking and driving" are well known and that the insured "knew, or should have known, that he was risking his life in a real and measurable way by driving while intoxicated"); *Fowler v. Metro. Life Ins. Co.*, 938 F. Supp. 476, 480 (W.D. Tenn. 1996) (stating that the "hazards of drinking and driving are widely known and widely publicized" and that it "is clearly foreseeable that driving while intoxicated may result in death or bodily harm"); *Mullaney v. Aetna U.S. Healthcare*, 103 F. Supp. 2d 486 (D.R.I. 2000) ("[A] reasonable person surely would have known that [drunken driving] would likely result in serious bodily harm or death."); *Weatherall v. Relizastor Life Ins. Co.*, 398 F. Supp. 2d 918, 924 (W.D. Wis. 2005) (concluding that an individual's loss of control of motorcycle was not an "accident" since he had a blood alcohol level of .198%). Therefore, Richard's accident, and the fact that he chose to drive an unfamiliar motorcycle while intoxicated, leads to the conclusion that this was not a "covered accident" under the Policy, in that the loss was not "unforeseeable."

In the end, based on the uncontradicted evidence of record, we think that reasonable minds would agree that Richard's accident was attributable, at least in part, to driving while

11

intoxicated and tragically, was foreseeable. Therefore, Defendant's motion for summary judgment will be GRANTED.

## IV. CONCLUSION

For the foregoing reasons, the Court finds as a matter of law that Defendant's denial of Plaintiffs' claim for benefits was correct. Therefore, Defendant's motion for summary judgment (Docket # 37) is GRANTED, and Plaintiffs' motion for summary judgment (Docket # 34) is DENIED. In addition, the motion for partial summary judgment filed by Plaintiffs on April 14, 2008, concerning the standard of review (Docket # 22), is deemed MOOT, due to the stipulation by the parties to a *de novo* review (Docket # 25). The Clerk is directed to enter judgment in favor of Defendant and against Plaintiffs.

SO ORDERED.

Enter for this 21st day of August, 2008.

/S/ Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge